UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MICHAEL RUBIN,<br><br>    Plaintiff,<br><br>  v.<br><br>MISONIX, INC., PATRICK J. BEYER, MICHAEL KOBY, PAUL LAVIOLETTE, THOMAS M. PATTON, and STAVROS VIZIRGIANAKIS,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Rubin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Misonix, Inc. ("Misonix" or the "Company") and the members of Misonix's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Misonix will be acquired by Bioventus Inc. ("Bioventus") through Bioventus' subsidiaries Oyster Merger Sub I, Inc. ("Merger Sub I"), and Oyster Merger Sub II, LLC ("Merger Sub II") (the "Proposed Transaction").

2. On July 29, 2021, Misonix and Bioventus issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated July 29, 2021 (the "Merger Agreement") to sell Misonix to Bioventus. Under the terms of the Merger Agreement, each Misonix shareholder will have the right to receive, at their election, either: (i) 1.6839 shares of Bioventus class A common stock, or (ii) $28.00 in cash for each share of Misonix common stock they own (the "Merger Consideration"). Upon completion of the merger, former Misonix stockholders are expected to own approximately 25% of the outstanding shares of Bioventus common stock and Bioventus stockholders immediately prior to the merger are expected to own approximately 75% of the outstanding shares of Bioventus common stock. The Proposed Transaction is valued at approximately $518 million.

3. On September 24, 2021, Misonix filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Misonix stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities, LLC ("J.P. Morgan"). The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Misonix stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Misonix's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (c) Misonix's principal executive offices are located in this District; and (d) certain defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Misonix.

9. Defendant Misonix is a Delaware corporation, with its principal executive offices located at 1938 New Highway, Farmingdale, New York 11735. Misonix is a leading manufacturer

of medical devices sold and marketed in the United States and internationally. Misonix's shares trade on the Nasdaq Global Select Market under the ticker symbol "MSON."

10. Defendant Patrick J. Beyer ("Beyer") has been a director of the Company since 2021.

11. Defendant Michael Koby ("Koby") has been a director of the Company since 2019.

12. Defendant Paul LaViolette ("LaViolette") has been a director of the Company since 2019.

13. Defendant Thomas M. Patton ("Patton") has been a director of the Company since 2015.

14. Defendant Stavros G. Vizirgianakis ("Vizirgianakis") has been President and Chief Executive Officer ("CEO") of the Company since December 2016, and a director since 2013. Defendant Vizirgianakis also previously served as Interim CEO from September 2016 until December 2016.

15. Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

16. Bioventus is a Delaware corporation with its principal executive offices located at 4721 Emperor Boulevard, Suite 400, Durham, North Carolina 27703. Bioventus is a global leader of innovations for active healing. Through a combination of internal product development, product/business acquisition, and distribution agreements, it will bring to market products which address a growing need for clinically effective, cost efficient, minimally invasive medical treatments, that engage and enhance the body's natural healing processes. The Innovations for Active Healing from Bioventus include offerings for pain treatment & joint preservation,

restorative therapies and bone graft substitutes.  Bioventus's common stock trades on the Nasdaq Global Select Market under the ticker symbol "BVS."

17. Merger Sub I is a Delaware corporation and a wholly owned subsidiary of Bioventus.

18. Merger Sub II is a Delaware limited liability company and a wholly owned subsidiary of Bioventus.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Misonix designs, manufactures and markets minimally invasive surgical ultrasonic medical devices.  These products are used for precise bone sculpting, removal of soft and hard tumors, and tissue debridement, primarily in the areas of neurosurgery, orthopedic surgery, plastic surgery, wound care and maxillo-facial surgery.  Misonix also exclusively markets, sells and distributes skin allografts and wound care products used to support healing of wounds, and which complement Misonix's ultrasonic medical devices.

20. The Company's neXus generator combines the capabilities of Misonix's three legacy ultrasonic products into a single system that can be used to perform soft and hard tissue resections.  Misonix also continues to market and sell these legacy ultrasonic products, which are:

- BoneScalpel Surgical System ("BoneScalpel") which is used for surgical procedures involving the precise cutting and sculpting of bone while sparing soft tissue.  BoneScalpel is now recognized by many surgeons globally as a critical surgical tool enabling improved patient outcomes in the spine surgery arena.

- SonaStar Surgical Aspirator ("SonaStar") which is used to emulsify and remove soft and hard tumors, primarily in the neuro and general surgery fields.

- SonicOne Wound Debridement System ("SonicOne") which offers tissue specific debridement and cleansing of wounds and burns for effective removal of devitalized tissue and fibrin deposits while sparing viable cells.

These devices primarily serve the following clinical specialties: neurosurgery, orthopaedic surgery, general surgery, plastic surgery, wound care and maxillo-facial surgery.

21. On September 2, 2021, the Company announced its fourth quarter and fiscal year 2021 financial results. Fiscal 2021 fourth quarter revenue of $19.7 million increased 43.5%, compared to $13.7 million in the fiscal 2020 fourth quarter. Full year fiscal 2021 revenue of $74.0 million increased 18.5%, compared to $62.5 million in full year fiscal 2020. Gross profit percentage on sales for the fiscal fourth quarter improved to 71.5%, compared with 68.8% in the fiscal 2020 fourth quarter, while full year fiscal 2021 gross margin improved to 71.1%, compared to 70.0% for the prior full year period. Net loss for the fiscal 2021 fourth quarter narrowed to $4.5 million, or a loss of $0.26 per diluted share, compared to a net loss of $8.5 million, or a loss of $0.50 per diluted share, in the fiscal 2020 fourth quarter. On a full year basis, net loss was $14.5 million for fiscal 2021, or a loss of $0.84 per diluted share, compared to a net loss of $17.4 million, or a loss of $1.19 per diluted share for fiscal 2020. Fiscal 2021 fourth quarter Adjusted EBITDA improved to a loss of $1.6 million, compared to an Adjusted EBITDA loss of $5.9 million in the fiscal 2020 fourth quarter. On a full year basis, Adjusted EBITDA improved to a loss of $3.2 million for fiscal 2021, compared to an Adjusted EBITDA loss of $12.3 million for fiscal 2020.

22. Following the successful launch of the neXus Ultrasonic Surgical System in select international markets and continued strong demand domestically, Misonix placed or sold over 250 neXus units in fiscal 2021, exceeding its full year guidance of 200 units. Reflecting on the results and business developments and looking to the future, defendant Vizirgianakis stated:

> Misonix concluded fiscal 2021 with an outstanding fourth quarter, which enabled us to deliver all-time record annual product revenue that exceeded the high-end of our guidance range for the fiscal year.  The continued recovery of the global healthcare industry, combined with the success of our teams in capitalizing on accelerating demand for our proprietary ultrasonic products and procedural solutions, resulted in year-over-year revenue growth of 43.5% in the fourth quarter and 18.5% for the full year.  In addition, the meaningful actions we have taken over the last twenty-four months to strengthen our supply chain enabled us to successfully navigate near-term pressures impacting companies worldwide, while maintaining our attractive gross margin above 70%.
>
> During the fiscal 2021 fourth quarter, a significant rebound in elective procedural volumes from the pandemic peak last June drove a 97.0% increase in total surgical revenue compared with last year's fourth quarter, including 97.0% growth domestically and 97.2% growth internationally.  Reflecting the continued strong adoption of our neXus Ultrasonic Surgical System, Misonix placed or sold over 250 neXus units in fiscal 2021, well ahead of our guidance of 200-unit placements.
>
> Though our wound business remained challenged throughout most of fiscal 2021, we believe that the value proposition of our ultrasonic wound debridement technology and wound care solutions remains strong and we expect to see a gradual improvement in this business over the coming quarters.  We are pleased with the stronger-than-anticipated recovery in our wound business in the fiscal 2021 fourth quarter, with total wound revenue rising 7.9% for the quarter.

**The Proposed Transaction**

23.    On July 29, 2021, Misonix and Bioventus issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> DURHAM, N.C. and FARMINGDALE, N.Y., July 29, 2021 -- Bioventus Inc. (Nasdaq: BVS) ("Bioventus"), a global leader in innovations for active healing, and Misonix, Inc. (Nasdaq: MSON) ("Misonix"), a provider of minimally invasive therapeutic ultrasonic technologies and regenerative medicine that enhance clinical outcomes, today announced that they have entered into a definitive agreement by which Bioventus will acquire Misonix in a cash-and-stock transaction.
>
> Under the terms of the agreement, which has been unanimously approved by the boards of directors of both Bioventus and Misonix, Misonix stockholders will receive aggregate consideration that values Misonix at approximately $518 million on a fully diluted basis (based on Bioventus' 7-day volume-weighted average stock price (VWAP) of $16.6284 per share) as of July 27, 2021.  In the transaction, Misonix stockholders may elect to receive either (i) 1.6839 shares of Bioventus class A common stock or (ii) $28.00 in cash, without interest, for each share of Misonix common stock they hold, subject to proration based on an aggregate

maximum cash amount payable by Bioventus equal to $10.50 per share of Misonix common stock outstanding shortly prior to the completion of the transaction. The aggregate share consideration represents 25% of the combined company on a fully diluted basis. The aggregate per-share value for Misonix represents a 25% premium to Misonix's 30-day VWAP as of July 27, 2021. The transaction is subject to regulatory approvals, Bioventus stockholder approval, Misonix stockholder approval, and other customary closing conditions. It is expected to close in the fourth quarter of 2021.

Following the closing of the transaction, the combined company is expected to conduct business as Bioventus Inc. and will leverage the global strengths of both product brands as a pure-play regenerative medicine and orthopedics company. The merger of Bioventus and Misonix will create a medical technology company positioned with leading products and specialized salesforces serving a $15 billion total addressable market across the hospital, ambulatory surgical center, and office care settings. The highly complementary nature of the two businesses are expected to result in scale across a range of care settings, geographies, and therapeutic areas.

Ken Reali, Chief Executive Officer of Bioventus, stated, "We are excited to further establish Bioventus as a differentiated, growth-focused medical technology company with deep and broad capabilities across a range of care settings and specialties. We believe this acquisition will accelerate our growth opportunities, enhance our double-digit revenue growth, and provide a significant opportunity for long-term margin expansion. We believe the combination with Misonix will create significant value for our shareholders and enable us to better serve our customers with more comprehensive solutions and a broader portfolio. The new Bioventus will also unlock meaningful growth opportunities for the employees of both organizations."

"We are thrilled to announce this agreement to combine with Bioventus and realize our next phase of commercial development," commented Stavros Vizirgianakis, Chief Executive Officer of Misonix. "Bioventus shares Misonix's commitment to improving patient outcomes, and we believe this combination will create value for our shareholders as the combined organization continues to drive innovation and increase physician demand."

The combined entity is anticipated to benefit significantly from opportunities to build on its extensive capabilities and commercial reach, including:

- Accelerating Misonix's BoneScalpel and Nexus adoption through Bioventus' extensive spine surgical solutions footprint;
- Augmenting Bioventus' leading lower extremity offerings and commercial footprint to accelerate growth in this call point;
- Significantly expanding the direct wound salesforce that covers the entire customer continuum, including physicians' offices, ambulatory surgical centers, wound clinics, and hospitals; and

- Extending Misonix's international access through Bioventus' direct channels and infrastructure in the Netherlands, Canada, Germany, and the UK.
- Financial Highlights

Bioventus expects the transaction to add nearly $80 million of calendar year 2021 revenue and provide an incremental 100 basis points to Bioventus' long-term average annual revenue growth rate before factoring in any potential revenue synergies.

Bioventus also expects the combination to generate $20 million of annual pre-tax cost synergies by the end of the second full year following the completion of the transaction. Cost synergy opportunities include public company expenses, overlapping support and systems costs, and infrastructure expenses.

Bioventus anticipates that the transaction will be accretive to its adjusted EBITDA in the first full year after completion of the transaction and accretive to its adjusted EBITDA margins by the second full year after completion of the transaction.

**Structure and Financing**

The transaction has been structured in a manner designed to be a tax-free reorganization for U.S. federal income tax purposes. The combined company will retain Bioventus' headquarters in Durham, NC.

Bioventus expects to fund the cash portion of the acquisition with cash on hand and through a fully committed financing provided by Wells Fargo. Pro forma for the combination, Bioventus estimates its year-end 2021 net leverage ratio to be approximately 3.6x before factoring in the benefit of any synergies. Bioventus anticipates significant deleveraging in 2022 and beyond.

**Governance**

Stavros Vizirgianakis, Chief Executive Officer of Misonix and a member of its Board of Directors, and Patrick Beyer, a member of Misonix's Board of Directors, will be added as members of the Bioventus Board of Directors at the closing of the transaction.

**Approvals**

The transaction is subject to regulatory approvals, Bioventus stockholder approval, Misonix stockholder approval, and other customary closing conditions. It is expected to close in the fourth quarter of 2021.

As a part of the transaction, certain Bioventus stockholders—Smith & Nephew, EW Healthcare Partners and Ampersand Capital, which in total represent a majority

of the overall shareholder base—have evidenced their support by entering into agreements to vote in favor of the transaction.

Certain Misonix stockholders—Stavros Vizirgianakis, SV Health Investors, and 1315 Capital—have also evidenced their support by entering into agreements to vote in favor of the transaction.

**Bioventus Second Quarter 2021 Revenue Results Update**

This afternoon, Bioventus separately pre-announced preliminary revenue results for the second quarter of 2021. Full financial results for the second quarter will be released after the market closes on August 10, 2021, followed by Bioventus' previously scheduled earnings call at 5:00pm ET that same day.

**Misonix Fourth Quarter and Full Year Revenue Results for Fiscal 2021**

This afternoon, Misonix separately pre-announced preliminary revenue results for the fourth quarter and full year of fiscal 2021. Full financial results for the fourth quarter and full year of fiscal 2021 will be released during Misonix's earnings call on a date to be determined.

**Advisors**

Perella Weinberg Partners LP acted as lead financial advisor to Bioventus. Morgan Stanley acted as financial advisor to Bioventus. Latham & Watkins LLP provided legal counsel to Bioventus. J.P. Morgan Securities LLC served as exclusive financial advisor to Misonix. Jones Day served as legal advisor to Misonix.

**Insiders' Interests in the Proposed Transaction**

24. Misonix insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Misonix.

25. Notably, certain Company insiders have secured positions for themselves with the combined company. For example, the Merger Agreement provides that defendants Vizirgianakis and Beyer will be appointed to serve on the board of the combined company.

26.     Moreover, Misonix insiders stand to reap substantial financial benefits for securing the deal with Bioventus. Pursuant to the Merger Agreement, all outstanding Company restricted stock will vest and convert into the right to receive the Merger Consideration. Defendant Vizirgianakis holds 159,800 shares of restricted stock with an aggregate value of $4,157,996 as of August 27, 2021.

27.     Further, if they are terminated in connection with the Proposed Transaction, Misonix insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Stavros G. Vizirgianakis | 1,145,400 | 7,543,569 | 33,823 | 8,722,792 |
| Joseph P. Dwyer | 556,800 | 1,089,332 | 22,067 | 1,668,200 |
| Robert S. Ludecker | 404,430 | 527,657 | — | 932,087 |

**The Proxy Statement Contains Material Misstatements and Omissions**

28.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Misonix's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor J.P. Morgan. Accordingly, Misonix stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning J.P. Morgan's Financial Analyses*

30. The Proxy Statement also describes J.P. Morgan's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Misonix's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

31. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* excluding synergies, the Proxy Statement fails to disclose: (i) the unlevered free cash flows ("UFCFs") that Misonix is expected to generate from July 1, 2021 through June 30, 2026 utilized in the analysis as well as all underlying line items; (ii) quantification of the terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.25% to 12.25%; (iv) the Company's net debt as of June 30, 2021; and (v) the number of outstanding shares of Misonix common stock.

32. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* including synergies, the Proxy Statement fails to disclose: (i) the UFCFs that Misonix is expected to generate from July 1, 2021 through December 31, 2025 utilized in the analysis as well as all underlying line items; (ii) quantification of the terminal values for the Company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.1% to 12.1%; and (iv) the number of outstanding shares of Misonix common stock.

33. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Bioventus, the Proxy Statement fails to disclose: (i) the UFCFs that Bioventus is expected to generate from July 1, 2021 through December 31, 2025 utilized in the analysis as well as all underlying line items;

(ii) quantification of the terminal values for Bioventus; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; and (iv) the number of outstanding shares of Bioventus common stock.

34. The omission of this information renders the statements in the "Opinion of Misonix's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

35. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Misonix will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

36. Plaintiff repeats all previous allegations as if set forth in full.

37. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

38. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy

Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about J.P. Morgan's financial analyses. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

42. Plaintiff repeats all previous allegations as if set forth in full.

43. The Individual Defendants acted as controlling persons of Misonix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Misonix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Misonix stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Misonix, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Misonix stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 12, 2021

**WEISSLAW LLP**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*